John Norkus, Esquire
Counsel for Plaintiffs
Attorney ID: 6309795
Lento Law Group P.C.
180 N. Stetson Ave, 35th Floor
Chicago IL 60601
P: (856) 652-2000
F: (856) 375-1010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRENDA BEZA<br><br>Plaintiff,<br><br>vs.<br><br>OCEANIA UNIVERSITY OF MEDICINE, inclusive,<br><br>Defendant(s). | CASE NO.:<br><br>**CIVIL ACTION**<br><br>**JURY DEMAND REQUESTED** |

## COMPLAINT

NOW COMES the Plaintiff, BRENDA BEZA, by and through her attorneys, LENTO LAW GROUP, P.C., and for her Complaint against Defendant, OCEANIA UNIVERSITY OF MEDICINE, states as follows:

## NATURE OF THE CASE

1. Plaintiff Brenda Beza brings this action against Oceania University of Medicine ("OUM") for breach of express and implied contract, consumer fraud under Illinois law, fraud in the inducement, fraudulent concealment, unjust enrichment, breach of fiduciary duty, negligence per se, and educational negligence. These claims arise from Defendant's decision to dismiss Plaintiff from its medical program based on retroactively applied and unpublished academic requirements, including an undisclosed NBME exam threshold never present in OUM's governing academic policies at the time of her

enrollment.


2. Plaintiff paid over $200,000 in tuition and educational expenses and dedicated five years of study to OUM's program before being dismissed under unjustified and unpublished academic thresholds that were never part of the governing agreement at the time of her enrollment.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because Plaintiff is a citizen of Illinois, Defendant is a foreign entity organized under the laws of Samoa, and the amount in controversy exceeds $75,000.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff resides here and a substantial part of the events and resulting harm occurred in this District.

## PARTIES

5. Plaintiff Brenda Beza is a citizen and resident of Oak Park, Illinois, and a former enrolled student in Defendant's medical program from 2019 to 2024.

6. Defendant Oceania University of Medicine is a foreign educational institution headquartered in Apia, Samoa, that recruits students in the United States and delivers remote education services to Illinois residents, including Plaintiff.

7. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

8. All of Plaintiff's claims stated herein are asserted against Defendant Oceania University and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## FACTUAL BACKGROUND

9. Defendant Oceania University of Medicine is a private international institution offering an online Doctor of Medicine (MD) program to U.S.-based students. Plaintiff Brenda Beza enrolled in OUM in August 2019, relying on the program's representations that it was governed by published academic policies and a stable, four-year curriculum.

10. The Student Handbook and academic catalog provided to Plaintiff upon enrollment made no mention of any requirement that students pass the National Board of Medical Examiners (NBME) Comprehensive Basic Science Exam (CBSE) in order to advance to clinical rotations or graduate.

11. Plaintiff successfully completed pre-clinical courses and remained in good academic standing for several years, paying substantial tuition and investing significant personal time and resources.

12. Beginning in 2022, OUM introduced a new "USMLE Step 1 Prep Program," which was encouraged for student participation but was not formally designated as mandatory nor incorporated into the academic policies or student handbook.

13. Plaintiff completed multiple phases of this program, including coursework and several NBME practice exams, while being told by administrators that the exams were diagnostic tools and would not be determinative of her academic standing.

14. Throughout 2023 and early 2024, Plaintiff received inconsistent and vague communication from OUM regarding the consequences of not meeting escalating NBME performance thresholds, which were raised from 70% to 90%, and later to 92%, without formal notice or update to school policies.

15. Plaintiff sat for three in-person NBME exams, with scores steadily improving, but ultimately received notice that her enrollment would be terminated due to

failure to meet the final 92% probability score threshold.

16. On March 15, 2024, OUM's Student Affairs Committee (SAC) issued a letter indicating that Plaintiff would be dismissed if she did not pass a final NBME attempt—without offering an appeal process, hearing, or individualized review.

17. On April 29, 2024, Plaintiff completed her final NBME attempt, achieving a score of 54, which translated to a 62% probability of passing the USMLE Step 1.

18. Despite her academic progress, compliance, and continued efforts, Plaintiff was dismissed from the program shortly thereafter, without any opportunity to respond or appeal.

19. Plaintiff was never provided with any updated policy or handbook language indicating that NBME performance was a graduation requirement, nor was she informed in writing that her academic standing was in jeopardy based on her NBME scores.

20. As a result of Defendant's conduct, Plaintiff was deprived of her ability to complete her education, obtain medical licensure, and pursue employment in the medical field.

21. Plaintiff has suffered significant damages, including the loss of over $200,000 in tuition, costs for unnecessary study materials, lost earning capacity, emotional distress, reputational injury, and future licensure opportunities.

**COUNT I – BREACH OF CONTRACT**

22. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and incorporates the same as if fully set forth at length herein.

23. At all times relevant hereto, Defendant Oceania University of Medicine held itself out to the public and to prospective students, including Plaintiff, as a professional and legitimate international institution of higher education, fully capable of providing a medical education in accordance with its published academic policies and procedures.

24. Plaintiff entered into an express contract with Defendant when she was accepted into the Doctor of Medicine program, agreed to comply with the university's terms and expectations, and paid substantial tuition to OUM in exchange for the delivery of a stable and fair educational experience.

25. The student handbook, academic catalog, enrollment materials, and related university publications—including those in effect at the time Plaintiff enrolled—serve as binding regulatory documents that govern the rights and responsibilities of students and the procedures to be followed by the university. These documents explicitly outline graduation requirements, disciplinary procedures, and student appeal rights.

26. Plaintiff was presented with the handbook and associated policies during the admissions process, and her acknowledgment of these policies was required as a condition of enrollment. As such, the student handbook and related academic policies formed the express terms of the parties' agreement.

27. These express terms included Defendant's obligation to maintain consistent graduation requirements throughout a student's enrollment, to notify students of any material policy changes, and to provide due process in the event of adverse academic actions such as dismissal.

28. Defendant materially breached this contract by imposing a mandatory passage requirement for the National Board of Medical Examiners (NBME) Comprehensive Basic Science Exam (CBSE)—a requirement that did not exist at the time of Plaintiff's enrollment and was never formally incorporated into the Student Handbook or published graduation policies during Plaintiff's time in the program.

29. Defendant further breached the contract by escalating the required passing score for the NBME multiple times—from 70% to 90%, and finally to 92%—without proper notice or amendment to any published policy, thereby subjecting Plaintiff to

retroactive academic standards that she had no prior opportunity to plan for or challenge.

30. Defendant failed to comply with its own procedures governing academic probation, remediation, and dismissal by denying Plaintiff access to a hearing, individualized review, and appeal as explicitly provided in the university's handbook.

31. Despite Plaintiff's years of coursework, participation in university-sanctioned exam preparation programs, and consistent efforts to improve, Defendant terminated Plaintiff's enrollment without affording her the protections guaranteed under the contract.

32. Plaintiff's dismissal was executed in a summary fashion following a March 2024 NBME attempt, and the Student Affairs Committee provided no written findings, no individualized assessment of Plaintiff's academic progress, and no opportunity for Plaintiff to respond to or appeal the adverse action, contrary to the Student Handbook and SAC decision-making framework.

33. Defendant's breaches were reasonably foreseeable consequences of its failure to follow its own contractual obligations and the procedures outlined in the university's academic materials.

34. As a direct and proximate result of Defendant's breach, Plaintiff has suffered significant damages, including the loss of over $200,000 in tuition and educational expenses, the loss of future employment and medical licensure opportunities, reputational harm, emotional distress, and other tangible and intangible injuries, all of which are continuing and will be proven at trial.

## COUNT II – BRECAH OF IMPLIED CONTRACT

35. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

36. At all times relevant hereto, Defendant Oceania University of Medicine held itself out to the public and to prospective students, including Plaintiff, as a professional and

accredited institution of higher learning, capable of delivering a reliable and structured medical education in accordance with reasonable academic norms and ethical obligations.

37. Plaintiff entered into a contractual relationship with Defendant when she accepted OUM's offer of admission and paid substantial tuition in exchange for academic instruction and the opportunity to complete a course of study leading to medical licensure.

38. While the express terms of the parties' agreement were memorialized in the Student Handbook and enrollment documents, Defendant also entered into implied contracts with Plaintiff. These implied obligations included the consistent application of academic standards, fair notice of material changes to graduation or progression requirements, and the provision of disciplinary review mechanisms prior to adverse actions such as dismissal.

39. Defendant's Student Handbook provides that students will be afforded a fair and transparent process when facing dismissal, including individual review by the Student Affairs Committee (SAC), reasonable notice, and an opportunity to respond. Plaintiff reasonably relied on these published norms as reflective not only of express promises but also of the broader implied obligations undertaken by Defendant in its role as an educational institution.

40. Defendant had an implied duty to act in good faith and to deal fairly with Plaintiff, including the duty not to arbitrarily alter academic requirements, the duty to apply existing standards consistently, and the duty to provide Plaintiff a reasonable opportunity to respond to the alleged academic deficiencies underlying her dismissal.

41. Defendant breached these implied duties by retroactively imposing a mandatory NBME passage requirement, escalating the required score multiple times mid-program without written notice, and denying Plaintiff a meaningful opportunity to appeal her dismissal or challenge the policy changes.

42. These breaches were reasonably foreseeable consequences of Defendant's failure to uphold its obligations and administrative responsibilities under the implied contract formed with Plaintiff through their continuing educational relationship.

43. As a direct and proximate result of Defendant's breaches, Plaintiff suffered substantial damages including lost tuition payments, diminished career opportunities, reputational harm, emotional distress, and other losses that continue to impact her personally and professionally.

## COUNT III – FRAUD IN THE INDUCEMENT

44. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

45. At all times relevant hereto, Defendant Oceania University of Medicine marketed itself as a credible, reliable, and student-centered international medical program, and Plaintiff relied on those representations when deciding to enroll in 2019.

46. Defendant made express and implied representations to Plaintiff, both prior to and during her enrollment, regarding the nature and requirements of OUM's medical program. These representations included assurances that the program requirements were governed by the published Student Handbook, that Plaintiff's academic progress would be evaluated consistently with the policies in place at the time of her enrollment, and that any significant changes to graduation or advancement requirements would be properly disclosed and administered in accordance with university policies.

47. Defendant further represented, both in its written materials and through the statements of its faculty and administrators, that progression into clinical rotations did not require passage of a specific NBME Comprehensive Basic Science Exam (CBSE), and that the NBME exams being offered as part of the USMLE Step 1 Prep Program were for practice purposes only. These representations were made to Plaintiff directly by faculty and

reinforced by omission from all governing academic documents. See Exhibits A, C, and D.

48. At no time during the admissions process or initial years of her enrollment was Plaintiff informed that her academic progression would be conditioned on achieving a specific minimum score on the NBME exam. Nor was Plaintiff informed that the required score would later be raised multiple times, from an initial 70% threshold to 90%, and eventually to a 92% probability metric. These undisclosed changes were applied retroactively and without any written policy or appeal mechanism.

49. Defendant knew or should have known at the time it made these representations that it would later impose NBME performance as a determinative requirement for clinical progression, and that the failure to meet that threshold would be grounds for academic dismissal. Despite having knowledge of this intended change in policy, Defendant failed to disclose it to Plaintiff and instead allowed her to continue incurring tuition obligations and purchasing study materials under materially false pretenses.

50. The above-referenced representations and omissions were made with the intent to induce Plaintiff to continue her enrollment, make further tuition payments, invest time and money into Defendant's prep programs, and forego opportunities to transfer or withdraw from the program.

51. Plaintiff reasonably relied on Defendant's misrepresentations and omissions in continuing her studies, taking multiple NBME exams, and purchasing supplemental prep materials such as Lecturio, UWorld, Boards & Beyond, and Pathoma. See Exhibit E. Plaintiff took all actions with the belief that she was on track to progress in the program as long as she met the requirements in place when she enrolled.

52. But for Defendant's false assurances and material omissions regarding the mandatory nature and scoring thresholds of the NBME exams, Plaintiff would not have

remained enrolled in the program, would not have expended further funds or time, and would have had the opportunity to pursue alternate academic or professional paths.

53. Defendant's fraudulent inducement of Plaintiff's continued enrollment resulted in significant and foreseeable harm, including but not limited to tuition loss, the cost of external exam preparation materials, lost educational and licensure opportunities, reputational injury, and emotional distress.

54. As a direct and proximate result of Defendant's fraud in the inducement, Plaintiff has suffered and continues to suffer substantial damages, all of which were foreseeable and were directly caused by Defendant's misrepresentations and omissions.

## COUNT IV – FRAUDULENT CONCEALMENT

55. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

56. At all times relevant hereto, Defendant Oceania University of Medicine owed Plaintiff a duty of full and fair disclosure based on the special relationship that existed between the parties. As a private educational institution offering professional medical degrees, OUM held exclusive knowledge over the rules governing student progression, dismissal, and graduation, and was in a superior position of trust and authority with respect to Plaintiff.

57. Defendant had exclusive control over the creation, amendment, and communication of academic standards and policies applicable to its medical students, and Defendant knew that students—including Plaintiff—would rely upon those policies in making significant educational and financial decisions, including whether to remain enrolled in the program.

58. Beginning in or around 2023, Defendant began implementing undisclosed changes to Plaintiff's academic progression requirements, including the imposition of a previously non-mandatory NBME Comprehensive Basic Science Exam (CBSE) passage requirement and escalating the required passing threshold from 70% to 90%, and ultimately to 92%.

59. These changes were never reflected in any updated Student Handbook, academic catalog, or other official publication. See Exhibit A. Despite having actual knowledge of these policy shifts, Defendant failed to disclose the changes to Plaintiff in a manner that would have allowed her to reasonably evaluate her academic standing or withdraw prior to incurring further costs or obligations.

60. In internal emails and Zoom discussions with Plaintiff, faculty members including Dean Khrystal Boone affirmatively misled Plaintiff by suggesting that no students had been dismissed from the program due to USMLE or NBME performance. See Exhibit D. This assurance was provided after Plaintiff had already struggled to meet the newly inflated score thresholds and was directly facing dismissal.

61. At no time did Defendant provide formal written notice to Plaintiff that she was at risk of termination from the program based on NBME scores. Instead, Defendant deliberately withheld this information while simultaneously encouraging Plaintiff to continue purchasing third-party preparation tools and sit for additional NBME attempts under the false belief that progress was still attainable through effort alone. See Exhibit E.

62. The concealment of material facts by Defendant—including the true impact of NBME performance on academic progression, the specific score thresholds required, and the university's intent to enforce these thresholds as a condition of continued enrollment—was done knowingly, deliberately, and with the intent to induce Plaintiff to continue making tuition payments, remain enrolled, and delay potential legal action or withdrawal

from the program.

63. Plaintiff justifiably relied on Defendant's failure to disclose these facts. She continued investing time, money, and effort into the program under the reasonable belief that she remained in good standing and that her progression would be evaluated under the same standards that were in effect when she enrolled in 2019.

64. Defendant's concealment of its true policies and intentions deprived Plaintiff of her ability to make informed decisions about her education and prevented her from pursuing timely alternative options, including transferring to a different institution, petitioning for review, or withdrawing before incurring further harm.

65. As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff has suffered extensive damages, including but not limited to lost tuition and educational investments, the cost of unnecessary and misleading NBME preparation materials, reputational harm, lost professional and licensure opportunities, emotional distress, and other economic and non-economic injuries.

66. Defendant's acts of concealment were willful and malicious, warranting an award of punitive damages in addition to compensatory relief.

## COUNT V – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

***(815 ILCS 505/1 et seq.)***

67. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

68. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act"), 815 ILCS 505/1 et seq., prohibits unfair and deceptive practices in the conduct of trade or commerce. Under the Act, education services sold to Illinois residents—including tuition-based programs offered by private, for-profit and nonprofit

institutions—are subject to its provisions.

69. At all times relevant hereto, Defendant Oceania University of Medicine was engaged in trade and commerce as defined by the Consumer Fraud Act by advertising, marketing, and selling medical education services to Illinois residents, including Plaintiff.

70. Plaintiff is a consumer protected by the Act. She paid tuition, purchased required educational materials, and relied on Defendant's representations in connection with the sale and delivery of education services in the State of Illinois.

71. Defendant engaged in a course of conduct designed to deceive Plaintiff and similarly situated students by materially misrepresenting and concealing the true nature of its graduation and academic progression requirements.

72. Specifically, Defendant falsely advertised a stable and transparent academic program governed by its published Student Handbook and policies. Plaintiff was led to believe that as long as she met the standards outlined in those documents at the time of enrollment, she would be eligible to complete her medical education and advance to clinical rotations.

73. Defendant failed to disclose that it would later impose a requirement that students pass the National Board of Medical Examiners (NBME) Comprehensive Basic Science Exam (CBSE) as a mandatory condition for progression to clinical rotations. This requirement was not in place at the time of Plaintiff's enrollment in 2019, nor was it ever published in the handbook or course catalog. See Exhibit A.

74. Defendant further failed to disclose that the NBME passage threshold would be arbitrarily increased from 70% to 90%, and then to 92%, during Plaintiff's enrollment, and that failure to meet this threshold would lead to dismissal. These shifting standards were withheld from Plaintiff, who continued to pay tuition and prepare for exams under false assumptions about what was required to complete the program. See Exhibit C.

75. In doing so, Defendant engaged in unfair practices by creating confusion, denying students reasonable notice of policy changes, and imposing retroactive academic standards after collecting substantial tuition and related fees.

76. Defendant also engaged in deceptive practices by assuring Plaintiff—both implicitly through its silence and explicitly through administrators—that students were not being dismissed based on NBME performance and that the exams were "practice-based," all while internally enforcing those scores as determinative. See Exhibit D.

77. Plaintiff reasonably relied upon Defendant's deceptive conduct and omissions. As a direct result, she remained enrolled, paid significant tuition, invested in costly third-party preparation tools, and lost the opportunity to mitigate her harm by transferring or withdrawing before dismissal.

78. Defendant's conduct offends public policy, is unethical and unscrupulous, and caused substantial injury to Plaintiff, all without justification. As such, it constitutes both deceptive and unfair conduct under the Act.

79. As a direct and proximate result of Defendant's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff suffered actual damages, including tuition loss, the cost of materials, reputational injury, lost employment and licensure opportunities, emotional distress, and other damages, all of which are compensable under the Act.

80. Pursuant to 815 ILCS 505/10a(c), Plaintiff also seeks an award of reasonable attorneys' fees and costs, as well as punitive damages in light of Defendant's willful and knowing violation of the Act.

## COUNT VI – NEGLIGENCE

81. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

82. At all times relevant hereto, Defendant Oceania University of Medicine was engaged in the provision of higher education services, including the administration of a Doctor of Medicine program marketed and delivered to students residing in the United States, including Plaintiff.

83. Defendant owed Plaintiff a duty to carry out its educational and administrative functions with reasonable care, consistency, and adherence to its own published academic policies and procedures, as outlined in its Student Handbook and official university communications.

84. While Illinois courts do not recognize claims for generalized "educational malpractice," claims grounded in administrative mismanagement and the failure to follow institutional policies—as opposed to academic judgment—are actionable as a form of institutional negligence when such duties are non-discretionary and clearly defined.

85. Defendant had a duty to exercise reasonable care in maintaining consistent and transparent academic progression policies, to ensure fair notice of material changes, and to follow its own stated procedures before subjecting students to adverse academic consequences, such as dismissal.

86. Defendant breached these duties by unilaterally and retroactively imposing a new requirement that Plaintiff pass the National Board of Medical Examiners (NBME) Comprehensive Basic Science Exam (CBSE) at an elevated threshold, without any written policy, handbook amendment, or individualized notification to Plaintiff.

87. Defendant further breached its duty by failing to provide Plaintiff with a meaningful opportunity to challenge the newly imposed standards or to appeal the decision to dismiss her from the program, despite express and implied representations that such procedures were available and would be followed. See Exhibit A.

88. These administrative and procedural obligations were not matters of academic discretion, but rather involved the application of clear institutional policies regarding notice, student review, and fair academic governance. Defendant's failure to comply with these procedures constitutes a breach of its duty of reasonable care to its enrolled students.

89. As a result of Defendant's negligent handling of its administrative obligations and deviation from standard university procedures, Plaintiff suffered foreseeable and substantial harm, including the loss of tuition, lost career and licensure opportunities, reputational damage, emotional distress, and the costs of unnecessary and misdirected exam preparation materials. See Exhibit E.

90. The harm Plaintiff experienced was the natural and proximate consequence of Defendant's failure to adhere to its own rules and to implement policy changes in a manner that afforded students fair notice and the opportunity to respond appropriately.

91. Defendant's conduct fell below the standard of care expected of a professional educational institution entrusted with students' academic futures and licensure pathways. Had Defendant followed its own policies and acted with due regard for Plaintiff's academic status, the harm Plaintiff sustained would have been avoidable.

92. As a direct and proximate result of Defendant's educational negligence, Plaintiff has suffered damages, including but not limited to the loss of her medical education, wasted tuition and expenses, delay or denial of medical licensure, reputational injury, and emotional harm, all of which are continuing and compensable under Illinois law.

**COUNT VII – BREACH OF FIDUCIARY DUTY**

93. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

94. At all times relevant hereto, Defendant Oceania University of Medicine held itself out as a trustworthy, reputable, and expert international medical education institution capable of guiding students through the demanding academic and licensing processes required for entry into the profession of medicine.

95. A fiduciary relationship existed between Plaintiff and Defendant by virtue of the unique and dependent relationship inherent in the student-university dynamic in this context, where Defendant maintained superior access to information, complete institutional control over Plaintiff's educational trajectory, and the discretionary authority to affect Plaintiff's ability to progress toward licensure, employment, and graduation.

96. Plaintiff, having entrusted her professional training, financial resources, academic career, and licensure prospects to Defendant, justifiably placed trust and confidence in Defendant's representations, policies, and assurances that it would adhere to its published rules and administer her progression fairly.

97. This fiduciary relationship was deepened by Defendant's continued exercise of discretionary power over Plaintiff's academic standing and Defendant's active communications regarding Plaintiff's NBME performance, progression status, and prospects for completing the program.

98. As part of its fiduciary obligations, Defendant owed Plaintiff the duties of good faith, full disclosure, loyalty, accountability, and to refrain from self-dealing or taking actions that favored its financial or institutional interests at the expense of Plaintiff's academic rights.

99. Defendant breached these fiduciary duties in multiple ways, including but not limited to: (a) failing to disclose that Plaintiff's continued enrollment and graduation would be conditioned on passing the NBME at a specific and escalating score threshold; (b) concealing the internal policy change that elevated the threshold from 70% to 92%; (c)

withholding key information from Plaintiff about her risk of dismissal; and (d) encouraging Plaintiff to continue investing tuition and time under materially false or incomplete information. See Exhibits C and D.

100. Defendant further breached its fiduciary obligations by failing to provide Plaintiff with a fair opportunity to appeal or contest her dismissal, despite the fact that OUM's Student Handbook and SAC procedures provided for individualized review and administrative appeal prior to academic termination. See Exhibit A.

101. Defendant also placed its own financial and reputational interests above Plaintiff's rights by enforcing opaque academic standards and extracting tuition and additional exam prep purchases while planning for her removal based on internal criteria not made available to students.

102. As a result of these breaches, Plaintiff was deprived of her right to receive a fair and transparent educational experience, was unjustly terminated from the medical program, and was precluded from completing her academic and professional journey after years of dedicated study.

103. Defendant's conduct was willful, deceptive, and constituted a knowing breach of its fiduciary responsibilities, warranting not only compensatory but also punitive damages.

104. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff has suffered and continues to suffer damages, including lost tuition, educational investment, career opportunities, reputation, and significant emotional harm, all of which were the foreseeable consequence of Defendant's misconduct.

## COUNT VIII – NEGLIGENCE PER SE

105. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

106. At all times relevant hereto, Defendant Oceania University of Medicine was bound by professional, contractual, and regulatory obligations governing its conduct as a provider of higher education, including but not limited to those established by its own institutional policies, accreditation standards, and consumer protection frameworks applicable to private educational institutions delivering services to U.S.-based students.

107. Defendant operated a medical education program marketed to and funded by students located in the United States, including Illinois residents like Plaintiff. As such, Defendant was required to comply not only with its internal policies but also with external standards imposed by educational oversight bodies such as the Educational Commission for Foreign Medical Graduates (ECFMG), the World Federation for Medical Education (WFME), and applicable consumer laws designed to protect students from deceptive, predatory, or unfair academic practices.

108. These standards—including but not limited to the duty to publish and consistently apply graduation requirements, the duty to notify students of material academic changes, and the obligation to implement fair appeals procedures—exist to ensure transparency, protect student investment, and prevent arbitrary or retroactive educational determinations.

109. Plaintiff is a member of the class of persons that these statutory, regulatory, and institutional duties were designed to protect. She is an enrolled student and educational consumer whose ability to complete her education and qualify for licensure depends on the proper and lawful administration of university policy.

110. Defendant violated these statutory and regulatory duties by failing to: (a) notify Plaintiff in writing of changes to graduation requirements; (b) formally incorporate new NBME thresholds into any published student policy; (c) offer Plaintiff a fair and documented appeals process prior to dismissal; (d) provide consistent, written standards

governing academic progression.

111. These violations of clearly established duties—rooted in institutional guidelines and supported by the policy goals of consumer and accreditation regulations—constitute negligence per se.

112. The harm that Plaintiff suffered, including academic dismissal, wasted tuition, loss of licensure eligibility, and emotional distress, is the very type of harm that the above-referenced duties were designed to prevent. Students rely on institutions to disclose and apply requirements fairly, and Defendant's failure to do so undermines the integrity and purpose of medical education and licensure systems.

113. Defendant's violations of these duties directly and proximately caused Plaintiff's injuries. Had Defendant complied with the applicable standards and properly disclosed and administered the NBME policies, Plaintiff could have taken meaningful action to preserve her academic standing or mitigate her losses.

114. As a result of Defendant's negligence per se, Plaintiff has suffered damages including but not limited to financial loss, educational disruption, reputational harm, emotional distress, and other compensable injuries under Illinois law.

## COUNT IX – UNJUST ENRICHMENT

115. Plaintiff hereby repeats and realleges all of the foregoing paragraphs and Exhibits contained in this Complaint as if fully set forth at length herein.

116. At all times relevant hereto, Plaintiff Brenda Beza paid substantial tuition, fees, and other educational expenses to Defendant Oceania University of Medicine in exchange for the promised delivery of a fair, transparent, and professionally administered medical education program governed by consistent and published academic standards.

117. Plaintiff also purchased numerous third-party preparation materials, including Lecturio, UWorld, Boards & Beyond, and Pathoma, at the direction and encouragement of

Defendant and its faculty, with the understanding that successful completion of the program was reasonably attainable under the standards that existed when she enrolled. See Exhibit E.

118. Defendant accepted and retained the full benefit of Plaintiff's financial investment, knowing that the academic conditions under which Plaintiff initially enrolled would not be honored and that material changes—including the mandatory NBME passage requirement and escalating score thresholds—would be imposed without notice or fair opportunity to adjust or withdraw.

119. At the time Defendant collected tuition and continued to solicit Plaintiff's participation in the Step 1 Prep Program, it failed to disclose that Plaintiff's academic standing and progression were in jeopardy based on newly elevated NBME standards that had never been published or approved through formal academic governance procedures. See Exhibit A.

120. Moreover, Defendant encouraged Plaintiff to remain enrolled and continue her investment of time and money, despite knowing that she had already fallen short of internal standards that would later be used to justify her dismissal.

121. Defendant's retention of these funds and resources—acquired through misrepresentations, omissions, and conduct inconsistent with professional standards—has resulted in a substantial financial benefit to Defendant at Plaintiff's expense.

122. Under the circumstances, it would be inequitable and unjust for Defendant to retain the financial benefit conferred by Plaintiff, including tuition payments, enrollment fees, and exam preparation expenditures, without providing the promised educational services, degree progression, or institutional protections outlined in OUM's own student policies.

123. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff has suffered significant damages including but not limited to the value of tuition lost, the cost of third-party academic materials, lost opportunity costs, and the emotional and financial consequences of being misled into continuing a program that was no longer available to her under fair or disclosed terms.

124. Plaintiff is entitled to restitution and disgorgement of the monies and benefits unjustly retained by Defendant, as well as any equitable relief the Court deems necessary to restore the parties to their rightful positions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that: this Court enter judgment in her favor and against Defendant as follows:

a. for compensatory damages exceeding $6,000,000;

b. punitive damages;

c. Restitution and disgorgement of unjust enrichment;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to applicable law;

f. Injunctive relief requiring correction of academic records and issuance of a neutral reference;

g. Any other relief the Court deems just and proper..

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

**CERTIFICATION**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

/s/ John Norkus

John Norkus, Esquire
Counsel for Plaintiffs
Attorney ID: 6309795
Lento Law Group P.C.
180 N. Stetson Ave, 35th Floor
Chicago IL 60601
P: (856) 652-2000
F: (856) 375-1010

Dated: October 17, 2025