**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRENDA BEZA,<br><br>Plaintiff,<br><br>v.<br><br>OCEANIA UNIVERSITY OF MEDICINE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-cv-14253<br><br>Judge Lindsay C. Jenkins |

**DEFENDANT OCEANIA UNIVERSITY OF MEDICINE'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. Introduction ... 1

II. Statement of Alleged Facts ... 2

III. Legal Standard ... 3

IV. Argument ... 4

A. Plaintiff's breach of contract claims (Counts I and II) should be dismissed. ... 4

1. Plaintiff fails to identify any specific contract term that was breached. ... 4

2. Plaintiff fails to allege that OUM's conduct was anything other than an exercise of academic judgment entitled to judicial deference. ... 6

3. Count II should also be dismissed as duplicative and legally unsupported. ... 7

B. Count VII (Breach of Fiduciary Duty) should be dismissed because Illinois does not recognize a fiduciary relationship between a university and a student. ... 8

C. Each of Plaintiff's fraud-based claims (Counts III-V) should be dismissed. ... 8

1. Plaintiff fails to plead Counts III-V with particularity ... 8

2. Count III (Fraudulent Inducement) should also be dismissed because it is based on non-actionable alleged representations about future conduct. ... 10

3. Count IV (Fraudulent Concealment) should also be dismissed because no duty to disclose exists absent a fiduciary or special relationship. ... 11

4. Count V (ICFA) should also be dismissed because Plaintiff alleges no deceptive act distinct from the alleged contract breach. ... 12

D. Count VI (Negligence / Educational Negligence) should be dismissed because Illinois does not recognize educational malpractice, and the claim is barred by the Moorman economic-loss doctrine. ... 12

E. Count VIII (Negligence Per Se) should be dismissed because Plaintiff pleads no basis for imposing strict liability on OUM. ... 13

F. Count IX (Unjust Enrichment) should be dismissed because allegations of an express contract govern the same subject matter. ....14

G. Plaintiff's request for injunctive relief should be dismissed because she alleged no clear right to be protected and there is an adequate legal remedy....14

H. Plaintiff's request for punitive damages should be dismissed because they are not recoverable. ....15

V. Conclusion .... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
718 N.E.2d 181 (Ill. 1999) ........ 13

*Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*,
936 F. Supp. 2d 933 (N.D. Ill. 2013) ........ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 3, 4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ........ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3, 4

*Bilut v. Nw. Univ.*,
645 N.E.2d 536 (Ill. App. Ct. 1994) ........ 14, 15

*Bissessur v. Ind. Univ. Bd. of Trs.*,
581 F.3d 599 (7th Cir. 2009) ........ 4

*Boone v. MB Fin. Bank, N.A.*,
375 F. Supp. 3d 987 (N.D. Ill. 2019) ........ 8

*Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*,
741 F.3d 769 (7th Cir. 2013) ........ 4, 5

*Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*,
826 N.E.2d 970 (Ill. App. Ct. 2005) ........ 10

*Enger v. Chi. Carriage Cab Corp.*,
812 F.3d 565 (7th Cir. 2016) ........ 14

*Frederick v. Nw. Univ. Dental Sch.*,
617 N.E.2d 382 (Ill. App. Ct. 1993) ........ 6

*Galligan v. Adtalem Glob. Educ. Inc.*,
No. 17 C 6310, 2019 WL 423356 (N.D. Ill. Feb. 4, 2019) ........ 9, 10

*Galligan v. Adtalem Glob. Educ. Inc.*,
No. 17 C 6310, 2020 WL 231078 (N.D. Ill. Jan. 15, 2020) ........ 6, 8

*In re Boeing 737 MAX Pilots Litig.*,
638 F. Supp. 3d 838 (N.D. Ill. 2022) ....................9, 11

*Kane v. Loyola Univ. of Chi.*,
No. 22 CV 6476, 2024 WL 1157396 (N.D. Ill. Mar. 18, 2024) ....................4, 5, 8

*McMahan v. Deutsche Bank AG*,
938 F. Supp. 2d 795 (N.D. Ill. 2013) ....................8

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
435 N.E.2d 443 (Ill. 1982) ....................12

*Morrow v. L.A. Goldschmidt Assocs., Inc.*,
492 N.E.2d 181 (Ill. 1986) ....................15

*Phillips v. DePaul Univ.*,
No. 12 CH 3523, 2012 WL 4000001 (Ill. Cir. Ct. Sep. 11, 2012) ....................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ....................4, 8

*Polley v. Nw. Univ.*,
560 F. Supp. 3d 1197 (N.D. Ill. 2021) ....................5, n.2

*Raethz v. Aurora Univ.*,
805 N.E.2d 696 (Ill. App. Ct. 2004) ....................6, 7, 12

*Robinson v. DeVry Educ. Grp., Inc.*,
No. 16 CV 7447, 2018 WL 828050 (N.D. Ill. Feb. 12, 2018) ....................10, 14

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) ....................4, 12

*Seitz-Partridge v. Loyola Univ. of Chi.*,
948 N.E.2d 219 (Ill. App. Ct. 2011) ....................15

*Shield Techs. Corp. v. Paradigm Positioning, LLC*,
908 F. Supp. 2d 914 (N.D. Ill. 2012) ....................11

*Voyles v. Sandia Mortg. Corp.*,
751 N.E.2d 1126 (Ill. 2001) ....................7

*Walker v. S.W.I.F.T. SCRL*,
491 F. Supp. 2d 781 (N.D. Ill. 2007) ....................8

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ....................11

*Wittmeyer v. Heartland All. for Hum. Needs & Rts.*,
No. 23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024)....13

*Zadrozny v. City Colleges of Chi.*,
581 N.E.2d 44 (Ill. App. Ct. 1991) ....7

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1
*et seq.* ....8, 10, 11

**Rules**

Fed. R. Civ. P. 9(b) ....1, 4, 8, 9

Fed. R. Civ. P. 12(b)(6)....1, 3

Pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendant Oceania University of Medicine ("OUM") submits this memorandum of law in support of its motion to dismiss Counts I–IX of the Complaint brought by Plaintiff Brenda Beza ("Plaintiff"). Each of the nine counts fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## I. **Introduction**

At its core, this case involves a medical school's academic judgment that a student had not demonstrated sufficient proficiency to advance toward clinical rotations and, ultimately, the practice of medicine. OUM recommended Plaintiff's dismissal from its Doctor of Medicine program after she failed to achieve a passing score on the National Board of Medical Examiners ("NBME") Comprehensive Basic Science Exam ("CBSE")—a standardized, nationally recognized assessment of readiness for the United States Medical Licensing Examination ("USMLE") Step 1. Rather than acknowledge her test scores and accept this result, Plaintiff filed a 23-page Complaint that attempts to transmute a reasoned academic-dismissal decision into nine overlapping tort, contract, and statutory claims. (Dkt. No. 1, "Compl.")

The Complaint suffers from several fatal deficiencies. As an initial matter, Plaintiff's counts for Breach of Contract (Counts I and II) fail to identify with sufficient specificity the terms of any contract between the parties. Indeed, Plaintiff alleges that "the student handbook and related academic policies formed the express terms of the parties' agreement," yet she neither attaches those documents (or any documents) to the Complaint—which references Exhibits A, C, D, and E—nor recites any language from them. Moreover, both counts fail to sufficiently plead that OUM's actions were arbitrary, capricious, or in bad faith.

The fraud-based counts (Counts III, IV, and V) fail to satisfy the heightened particularity requirements of Federal Rule of Civil Procedure 9(b). The remaining counts are barred by settled

Illinois law: Illinois does not recognize claims for educational malpractice, does not impose fiduciary duties on universities toward their students, and does not permit an independent cause of action for breach of the implied covenant of good faith and fair dealing in this context. The negligence claim is foreclosed by the Moorman economic-loss doctrine because Plaintiff seeks only economic damages arising from the parties' contractual relationship. And the unjust-enrichment claim cannot coexist with the contract that Plaintiff alleges governs the same subject matter.

Stripped of legal labels, each count repackages the same grievance: dissatisfaction with an academic-progression decision. Courts have long afforded such decisions substantial deference. The Complaint should be dismissed in its entirety with prejudice.

## II. Statement of Alleged Facts

The following facts are drawn from the Complaint, which Defendant accepts as true solely for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Brenda Beza is a citizen and resident of Oak Park, Illinois. (Compl. ¶ 5.) Defendant Oceania University of Medicine is a private international educational institution headquartered in Apia, Samoa, that offers an online Doctor of Medicine program to U.S.-based students. (*Id.* at ¶¶ 6, 9.) Plaintiff enrolled in OUM's program in August 2019. (*Id.* at ¶ 9.)

Plaintiff alleges that the Student Handbook and academic catalog provided to her upon enrollment did not mention any requirement that students pass the NBME Comprehensive Basic Science Exam ("NBME") in order to advance to clinical rotations or graduate. (*Id.* at ¶ 10.)[1] She

[1] On September 23, 2026, counsel for OUM informed Plaintiff's counsel that the Exhibits referenced in the Complaint were not filed. Plaintiff's counsel did not respond. OUM's counsel followed up on September 28. Plaintiff's counsel responded on September 29, indicating he would file the exhibits that week. OUM's counsel followed up again that day and on October 2. Yet, to date, neither the Exhibits nor any "student handbook and related academic policies" have been filed. (Compl. ¶ 26.)

further alleges that she completed pre-clinical courses, remained in good academic standing for several years, and paid over $200,000 in tuition and related expenses. (*Id.* at ¶¶ 2, 11, 21.)

Beginning in 2022, OUM introduced a "USMLE Step 1 Prep Program" that encouraged student participation and included NBME practice exams. (*Id.* at ¶ 12.) Plaintiff alleges that faculty and administrators told her the NBME exams were "diagnostic tools" and "practice-based" and would not be determinative of her academic standing. (*Id.* at ¶¶ 13, 47.) She alleges that throughout 2023 and early 2024, OUM communicated inconsistent and escalating NBME performance thresholds—raising the required passing score from 70% to 90% and later to 92%—without formal notice or updates to published school policies. (*Id.* at ¶¶ 14, 48.) She did not allege that any one of her scores met the alleged 70%, 90%, or 92% performance thresholds.

On March 15, 2024, OUM's Student Affairs Committee ("SAC") issued a letter indicating that Plaintiff would be dismissed if she did not pass a final NBME attempt. (*Id.* at ¶ 16.) On April 29, 2024, Plaintiff sat for the NBME exam and achieved a score of 54, which she alleges translated to a 62% probability of passing USMLE Step 1. (*Id.* at ¶ 17.) Plaintiff was dismissed from the program shortly thereafter, allegedly without access to an appeal process, a hearing, individualized review, or an opportunity to respond. (*Id.* at ¶¶ 18, 32.)

## III. <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). While the Court

accepts well-pleaded factual allegations as true, it need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Legal conclusions, labels, and formulaic recitations of elements are insufficient. *Twombly*, 550 U.S. at 555.

Fraud claims are subject to a heightened standard. "[T]he circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). If a complaint fails to meet this heightened pleading standard, dismissal is required. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011).

## IV. <u>Argument</u>

### A. Plaintiff's breach of contract claims (Counts I and II) should be dismissed.

#### 1. <u>Plaintiff fails to identify any specific contract term that was breached.</u>

To state a claim for breach of contract, Plaintiff "must point to an identifiable contractual promise that the defendant failed to honor." *Kane v. Loyola Univ. of Chi.*, No. 22 CV 6476, 2024 WL 1157396, at *16 (N.D. Ill. Mar. 18, 2024) (*quoting Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992)). For implied breach-of-contract claims, the complaint "must be specific about the source of [the] implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013). Without an identifiable contractual promise, the court will not participate in "second-guessing the professional judgment of the University faculty on academic matters." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quotation omitted).

Plaintiff does not specifically identify any documents that form the basis of the alleged express or implied contract apart from general references to a Student Handbook (version unspecified), an "academic catalog," "related academic policies," "enrollment materials," and "related university publications." (Compl. ¶¶ 25–26, 38.) None was attached to the Complaint.

Nor does Plaintiff identify with any specificity the exact promises OUM allegedly made and breached; she instead alleges only broad topics, such as consistent graduation requirements, notice of material policy changes, and a fair process for responding to dismissal. (*See, e.g.*, Compl. ¶¶ 27, 38–39.) These general allegations do not state a claim for breach of express or implied contract. *See Charleston*, 741 F.3d at 773 (finding no plausible breach-of-implied contract claim where the plaintiff did not "describe the specific promises that the university made to him" or identify the alleged "'University Statutes' and their contents"); *Kane*, 2024 WL 1157396, at *17 (dismissing claim because "[w]hile the complaint quotes broadly from [defendant's] policy handbook, it does not specifically indicate which promises were not honored.").

The Complaint also lacks facts about the promises Plaintiff made in return. Plaintiff pleads only that she paid tuition. She omits that she also agreed to "abide by change in policy as published on" the OUM Learning Management System (eOUM). (Ex. 1 ¶ d.) She further accepted "full responsibly for the consequences of not complying with . . . communication posted on eOUM or sent to [her] OUM e-mail address." (*Id.* ¶ f.)[2] She thus acknowledged at the time of enrollment that OUM's policies may change and that it was her responsibility to abide by any new policies. This underscores both the lack of specificity Plaintiff pleads in support of her claims and the futility of amendment.

[2] Plaintiff pleads that the express and implied contracts she alleges between her and OUM included enrollment materials and her acknowledgement of policies. (*See* Compl. ¶¶ 25–26, 38.) The declaration attached as Exhibit 1 hereto is Plaintiff's acceptance of admission. (*See* Ex. 1.) It thus was incorporated by reference in the Complaint, and the Court can properly consider it in deciding OUM's Motion to Dismiss. *See Polley v. Nw. Univ.*, 560 F. Supp. 3d 1197, 1204–205 (N.D. Ill. 2021).

2. Plaintiff fails to allege that OUM's conduct was anything other than an exercise of academic judgment entitled to judicial deference.

Plaintiff's breach of contract claims challenge a fundamentally academic decision—namely, whether she had demonstrated sufficient mastery of basic science material to advance toward clinical rotations and, ultimately, full medical licensure. But "courts are reluctant to interfere with the academic affairs and regulation of student conduct in a private university setting." *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct. 2004).

If a breach of contract claim is based on "adverse academic decisions," students must allege facts to support a finding that the university's "decision was made arbitrarily, capriciously, or in bad faith." *Id.* at 699. A "court may not override the academic decision of a university unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment," or because a student was dismissed for reasons wholly unrelated to academics, such as retaliation or discrimination. *Raethz*, 805 N.E.2d at 699; *see Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2020 WL 231078, at 4–5 (N.D. Ill. Jan. 15, 2020). Plaintiff bears the heavy burden of meeting this standard. *See Frederick v. Nw. Univ. Dental Sch.*, 617 N.E.2d 382, 388 (Ill. App. Ct. 1993).

Plaintiff has not alleged facts sufficient to meet the heightened arbitrary and capricious standard. Both contract claims arise from OUM's alleged dismissal of Plaintiff. In support of both, Plaintiff generally alleges OUM breached its obligations by imposing a mandatory NBME requirement, changing the required score, and failing "to comply with its own procedures governing academic probation, remediation, and dismissal." (Compl. ¶ 30, 41.) These are "precisely the kind of academic decision that courts do not second-guess." *Galligan*, 2020 WL 231078, at *5 (dismissing claim based on failing to follow the academic probation procedures

defendant outlined in its student handbook). If these allegations were sufficient to state a breach of contract claim against a university, "any failure by a university to comply with the terms set forth in the university's catalogs or manuals would amount to per se arbitrary and capricious conduct." *Raethz*, 805 N.E.2d at 700.

Moreover, although Plaintiff alleged that she "was never . . . informed in writing that her academic standing was in jeopardy based on her NBME scores," she also alleged that "OUM's Student Affairs Committee (SAC) issued a letter indicating that Plaintiff would be dismissed if she did not pass a final NMBE attempt." (Compl. ¶¶ 16, 19.) Thus, accepting her allegations as true, OUM's decision was not arbitrary but grounded in her test performance; it was an exercise of academic judgment that warrants dismissal of Plaintiff's contract claims

3. <u>Count II should also be dismissed as duplicative and legally unsupported.</u>

Count II also fails for two independent reasons. First, it is impermissibly duplicative of Count I. Where a written agreement—here, according to the Complaint, the Student Handbook and related academic policies (Compl. ¶ 26)—governs the same subject matter, an implied contract claim covering the same ground cannot stand. *See Zadrozny v. City Colleges of Chi.*, 581 N.E.2d 44, 48 (Ill. App. Ct. 1991) ("No claim on a contract implied in law can be asserted if an express contract or a contract implied in fact exists between the parties and concerns the same subject matter.") Plaintiff alleges that the Student Handbook expressly governed academic standards, dismissal procedures, and graduation requirements. (Compl. ¶¶ 25–27.) She cannot simultaneously maintain that an express contract governed the relationship and that a separate implied contract imposed different or additional obligations.

Second, to the extent Count II asserts a standalone claim for breach of the implied covenant of good faith and fair dealing, Illinois law forecloses it. *See Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001) (declining to recognize a cause of action for breach of

good faith and fair dealing where remedies under alleged contract or traditional tort theories were available). The covenant of good faith and fair dealing is not an independent source of contractual duties or liability, and the claim should be dismissed. *See Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019) (dismissing claim for breach of covenant of good faith and fair dealing with prejudice).

**B. Count VII (Breach of Fiduciary Duty) should be dismissed because Illinois does not recognize a fiduciary relationship between a university and a student.**

"There is no Illinois authority finding that a fiduciary relationship exists between a student and an educational institution." *Phillips v. DePaul Univ.*, No. 12 CH 3523, 2012 WL 4000001, at *Sect. 2 (Ill. Cir. Ct. Sep. 11, 2012). The same is true for university students. *See Kane*, 2024 WL 1157396, at *17. Because OUM did not owe Plaintiff any fiduciary duties, Plaintiff's breach of fiduciary duty claim fails as a matter of law. *See Galligan*, 2020 WL 231078, at *6 (finding school did not owe any fiduciary duty to student and dismissing claim).

**C. Each of Plaintiff's fraud-based claims (Counts III-V) should be dismissed.**

1. <u>Plaintiff fails to plead Counts III-V with particularity.</u>

Counts III–V are all based in fraud. Under Rule 9(b)'s heightened pleading standard, Plaintiff must plead facts describing the "who, what, when, where, and how" of the fraud for these claims to survive a motion to dismiss. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 631 F.3d at 441–42 (cleaned up); *see also McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 805–06 (N.D. Ill. 2013) (dismissing fraudulent omission claim). This same standard applies to claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"). *See Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 794–95 (N.D. Ill. 2007) (dismissing ICFA claim for failure to plead with particularity under Rule 9(b)).

*In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838 (N.D. Ill. 2022) is instructive. The allegations concerning fraud consisted of generalities. The complaint did not include "what the alleged fraudster actually said." *Id.* at 870 ("A high-level paraphrase doesn't cut it."). The complaint also did not identify any specific person by name who made the alleged misrepresentation. *See id.* at 871. The failure to plead with particularity necessitated dismissal. *See id.* at 872.

As in *In re Boeing*, Plaintiff's allegations for Counts III–V do not meet the heightened pleading standard. The Complaint fails to identify: (1) which specific individual made each alleged representation; (2) the precise content of the statements; (3) the specific dates and circumstances of each communication; or (4) the medium (e.g., email, conversation, written document) through which each representation was made. These are exactly the details Rule 9(b) demands.

Instead, the allegations consist of general paraphrasing of the topics of the alleged misrepresentations. (*See, e.g.*, Compl. ¶¶ 46, 72.) Plaintiff does not quote the cited Exhibits, provide page or section citations to them, or even attach them. (*See, e.g.*, Compl. ¶¶ 47, 76.)

Only one paragraph references a specific individual at OUM who allegedly made an affirmatively misleading statement. (*Compare* Compl. ¶ 60 *with* ¶¶ 47, 76.) But it does not include the specific alleged misrepresentation; Plaintiff did not attach the referenced Exhibit with the alleged misrepresentation. Nor did she allege when it was made. (*See id.*) Plaintiff pleads only that the individual was "suggesting" no students had been dismissed, not a statement specific to Plaintiff. The failure to identify specific statements or when they were made warrants dismissal of Counts III–V. *See Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *4 (N.D. Ill. Feb. 4, 2019) (holding Rule 9(b) not met where plaintiff did "not recite

when the statements were made . . . ."); *Robinson v. DeVry Educ. Grp., Inc.*, No. 16 CV 7447, 2018 WL 828050, at *5 (N.D. Ill. Feb. 12, 2018) (explaining the attached exhibits included a variety of claims, but the plaintiff failed to identify the specific statements at issue).

Moreover, Plaintiff's own allegations undercut the viability of her fraud claims. She pleads both that she never received formal written notice that she was at risk of termination and that a Student Affairs Committee letter notified her she would be dismissed if she failed her final NBME attempt. (*See* Compl. ¶¶ 16, 61.) Her allegations that OUM increased performance thresholds "[t]hroughout 2023 and early 2024" reveal she had knowledge of the increases, belying any fraud by omission. These allegations thus also undermine reliance on any alleged misrepresentation or omission, so the "how" of the fraud is not sufficiently pled. Further, in support of her ICFA claim she pleads that she believed she could complete her medical education so long as she met the standards in place *at enrollment*, yet she signed a document acknowledging that OUM may change its policies. (*Compare* Compl. ¶ 72 *with* Ex. 1 ¶ d.) These inconsistencies show that amendment would be futile.

Finally, to the extent Plaintiff alleges she relied on general marketing materials describing OUM as "credible, reliable, and student-centered" (Compl. ¶ 45), such statements are nonactionable puffery—vague, promotional characterizations that no reasonable person would interpret as a guarantee of specific academic policies. *See Galligan*, 2019 WL 423356, at *5–6 (dismissing claim).

2. Count III (Fraudulent Inducement) should also be dismissed because it is <u>based on non-actionable alleged representations about future conduct.</u>

Many of the alleged "misrepresentations" are, at best, statements about future academic policy—e.g., that OUM would not later impose an NBME passing requirement or change test performance standards. Count III thus impermissibly repackages Plaintiff's breach of contract

claims. Under Illinois law, "promises of future conduct, even if made without a present intention to perform, do not constitute fraud." *Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 826 N.E.2d 970, 978 (Ill. App. Ct. 2005). Therefore, Plaintiff's fraudulent inducement claim should be dismissed on this independent basis as well. *See Shield Techs. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 920 (N.D. Ill. 2012) (finding plaintiff "merely repackaged its breach-of-contract claim as a claim for" non-actionable promissory fraud).

3. Count IV (Fraudulent Concealment) should also be dismissed because no duty to disclose exists absent a fiduciary or special relationship.

In addition to failing to meet the heightened pleading standard, the fraudulent concealment claim must be dismissed because a fiduciary relationship is required. *See Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 945–46 (N.D. Ill. 2013) ("To prove fraud by the omission of a material fact, it is necessary to show the existence of a special or fiduciary relationship.") As explained above, OUM does not have a fiduciary relationship with Plaintiff. (*See supra* Sect. IV.B.)

Plaintiff also fails to plead any special trust relationship. Her allegations of superior access to information, institutional control, and discretionary authority are not unique; they inhere in every university-student relationship and in relationships across many industries. Finding the university-student relationship a "special" relationship would make such relationships "so prevalent" as to "cease be[ing] special" at all. *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d at 864 (rejecting that disparate knowledge, influence, and superiority give rise to a special relationship under Illinois law). Indeed, Illinois courts rarely find "a special trust relationship to exist in the absence of a more formal fiduciary one." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Plaintiff's claim fails as a matter of law.

4. Count V (ICFA) should also be dismissed because Plaintiff alleges no deceptive act distinct from the alleged contract breach.

A breach-of-contract claim is not actionable under the ICFA. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). It is settled law that the ICFA "was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Id.* (cleaned up).

The Complaint fails to identify a deceptive act or practice distinct from the alleged breach and thus must be dismissed. Plaintiff's allegations mirror those of her breach of contract claims, including the same allegations regarding changing academic requirements and failure to notify Plaintiff of policy changes. (*See, e.g.*, Compl. ¶¶ 72–74.) Plaintiff not only incorporated her prior breach of contract allegations, but explicitly referenced the "published Student Handbook and policies" that form the basis of the alleged contract. (*Id.* at ¶¶ 25–26, 38, 67, 72.)

**D. Count VI (Negligence / Educational Negligence) should be dismissed because Illinois does not recognize educational malpractice, and the claim is barred by the Moorman economic-loss doctrine.**

Count VI is barred as a matter of Illinois law for two independent reasons. First, Illinois courts have not recognized a cause of action for educational malpractice. *See Ross*, 957 F.2d at 414–15. Plaintiff herself acknowledges this bar and attempts to recharacterize her claim as one for "*administrative mismanagement*" rather than educational malpractice. (Compl. ¶¶ 84, 88.) But this relabeling is unavailing. The alleged duties—to maintain "consistent" academic progression policies, to provide "fair notice of material changes," and to follow "stated procedures" before dismissal (Compl. ¶ 85)—are all coextensive with the contractual obligations alleged in Counts I and II. The claim requires the Court to evaluate the reasonableness of an academic institution's pedagogical and evaluative decisions, which is precisely what Illinois courts prohibit. *See, e.g.*, *Raethz*, 805 N.E.2d at 699.

Second, Count VI is barred by the Moorman economic-loss doctrine. Under Illinois law, "there is no recovery [in tort] for economic losses alone." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448 (Ill. 1982). Plaintiff's claimed damages—lost tuition, lost earning capacity, the cost of study materials, and reputational injury—are quintessentially economic losses flowing from the parties' contractual relationship. There is no allegation of personal injury or damage to other property. Accordingly, Plaintiff's remedy, if any, lies in contract, not tort. Count VI should be dismissed.

**E. Count VIII (Negligence Per Se) should be dismissed because Plaintiff pleads no basis for imposing strict liability on OUM.**

A claim for negligence *per se* requires that the defendant be subject to strict liability. *See Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999). Therefore, violation of a statute does not constitute negligence *per se* unless the legislature clearly intended to impose strict liability. *Id.*

Plaintiff does not identify any specific "applicable consumer law" (Compl. ¶ 107), much less one that would impose strict liability on OUM. Although Plaintiff refers generally to standards of educational oversight bodies, she alleges no specific standard or other basis for imposing strict liability on OUM.

Even if Plaintiff had shown a violation of a statute setting strict liability, she has pled no facts beyond conclusory statements sufficient to allege: (1) she is a member of the class of persons protected by the statute; (2) her alleged injury is the type the statute intended to protect against; and (3) OUM's violation of the statute proximately caused the injury. *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, No. 23 CV 1108, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024). Plaintiff fails to state a claim for negligence *per se*.

### F. Count IX (Unjust Enrichment) should be dismissed because allegations of an express contract govern the same subject matter.

Plaintiff's unjust enrichment claim is premised on the same alleged failure to fulfill a contract between her and OUM. For instance, as in her implied breach-of-contract claim, she alleged that OUM failed to disclose Plaintiff's academic standing was in jeopardy based on new NBME standards not published or approved, citing Exhibit A. (*Compare* Compl. ¶ 28 *with* ¶ 119.) Indeed, she incorporated by reference her factual allegations concerning the existence of a contract. (*Id.* at ¶ 115.) This necessitates dismissal of the claim. *See Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (unjust enrichment inapplicable where the parties' relationship governed by implied contract); *Robinson*, 2018 WL 828050, at *5 n.3 (dismissing unjust enrichment claim because supporting allegations incorporated an alleged contractual relationship).

### G. Plaintiff's request for injunctive relief should be dismissed because she alleged no clear right to be protected and there is an adequate legal remedy.

"A plaintiff alleging wrongful dismissal from a private university based upon an academic decision is not entitled to injunctive relief unless the following is established: (1) the plaintiff has a clear legal right that should be protected; (2) there is no adequate legal remedy; and (3) irreparable harm will result without the injunctive relief." *Bilut v. Nw. Univ.*, 645 N.E.2d 536, 540 (Ill. App. Ct. 1994).

Plaintiff has no clear legal right warranting injunctive relief. Illinois recognizes the right of a university, like OUM, to set its own rules and regulations that students must adhere to in order to attend. *See Bilut*, 645 N.E.2d at 540. OUM notified Plaintiff that she was not meeting the performance thresholds, gave her one more opportunity to pass the NBME, but she did not. (*See* Compl. ¶¶ 14–17.) And as explained above (*see supra* Sect. IV.A.2), Plaintiff's allegations do not support that OUM acted arbitrarily, capriciously, or in bad faith "in derogation of a clear

legal right which she had." *Seitz-Partridge v. Loyola Univ. of Chi.*, 948 N.E.2d 219, 230 (Ill. App. Ct. 2011) (upholding dismissal of injunctive relief).

Finally, Plaintiff fails to allege the absence of an adequate legal remedy; indeed, monetary relief is available for wrongful expulsion of a student under Illinois law. *See Bilut*, 645 N.E.2d at 541.

### H. Plaintiff's request for punitive damages should be dismissed because they are not recoverable.

To the extent Plaintiff's claims survive (they should not), her demand for punitive damages must be stricken. Punitive damages are not recoverable for breach of contract under Illinois law absent an independent tort. *See Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 183–184 (Ill. 1986). Because each of the tort claims fails as a matter of law, no independent tort supports a punitive-damages award.

## V. Conclusion

At its core, Plaintiff alleges that OUM breached a contract by dismissing her for failing to meet testing standards. She then repackages that complaint into nine duplicative counts, each of which fails as a matter of law. Illinois law is clear that a court should not substitute its judgment for a university's, and Plaintiff pleads no facts showing that OUM exercised its academic judgment arbitrarily, capriciously, or in bad faith. She fails to identify a specific contractual breach or to plead fraud with particularity, Illinois does not recognize educational malpractice, and no law imposes on OUM the duties she alleges. OUM therefore respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: October 9, 2026

Respectfully submitted,

/s/ Kristin J. Achterhof
Kristin J. Achterhof
Julia L. Mazur
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
kristin.achterhof@katten.com
julia.mazur@katten.com

*Attorneys for Defendant Oceania University of Medicine*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, I caused the foregoing to be filed via the Court's CM/ECF system, which will send electronic notice to all attorneys of record.

/s/ Kristin J. Achterhof