**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRENDA BEZA<br><br>Plaintiff,<br><br>vs.<br><br>OCEANIA UNIVERSITY OF MEDICINE, inclusive,<br><br>Defendant(s). | CASE NO.: 1:25-cv-14253<br><br>**CIVIL ACTION**<br><br>**JURY DEMAND REQUESTED** |

Hon. Lindsay C. Jenkins

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

## I. INTRODUCTION

Defendant portrays this suit as a request for judicial regrading of a medical-school examination, however that is an inaccurate characterization of this suit. Plaintiff Brenda Beza alleges that Oceania University of Medicine ("OUM") enrolled her under published academic policies, subsequently imposed a mandatory National Board of Medical Examiners ("NBME") threshold not included in those policies, changed the threshold during her enrollment, represented that the examinations were diagnostic, and dismissed her without the review and appeal procedures that the school's own materials allegedly promised. Compl. ¶¶ 9–19, 24–32, 45–52, 58–64 (ECF No. 1). Whether these allegations ultimately are provable is not an appropriate question for Rule 12(b)(6).

The most substantial issue is whether the operative policies contain sufficiently definite promises. Plaintiff has identified her subjects and alleged the manner of breach, but the complaint

does not quote the provisions and the referenced exhibits were not filed. Those deficiencies warrant particular attention; they do not establish that amendment would be futile. Plaintiff requests denial of the motion as to her adequately stated claims and, alternatively, leave to amend under Rule 15(a)(2), rather than dismissal with prejudice. Plaintiff does not ask the Court to recognize educational malpractice or an independent Illinois tort for breach of the covenant of good faith.

## II. FACTS ALLEGED AND GOVERNING STANDARD

Beza enrolled in August 2019 and alleges that the Student Handbook and academic catalog furnished at enrollment did not condition progression or graduation on passing the NBME Comprehensive Basic Science Exam (“CBSE”). Compl. ¶¶ 9–10. She completed preclinical coursework and paid substantial tuition to study at the university. Id. ¶¶ 2, 11. Starting in 2022 OUM introduced a Step 1 preparation program, allegedly represented its NBME examinations as diagnostic, and later raised reported performance thresholds from 70% to 90% and then 92% without incorporation into the written policies. Id. ¶¶ 12–15. A March 15, 2024 Student Affairs Committee letter warned of dismissal after a final attempt; Beza took that attempt on April 29, 2024 and was dismissed shortly thereafter. Id. ¶¶ 16–19. She alleges that the final warning did not cure earlier failures to publish governing criteria or provide the prescribed individualized appeal. Id. ¶¶ 19, 30–32.

A complaint survives if its factual allegations, accepted as true and construed favorably to the plaintiff, plausibly suggest relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 does not require a plaintiff to prove her claims in the pleading. Allegations of fraud must, however, satisfy Rule 9(b), including circumstances identifying the deceptive conduct with particularity. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011).

## III. ARGUMENT

**A. Count I alleges an objectively reviewable contractual dispute, not a request to second-guess academic judgment.**

A university–student relationship can be contractual, but Illinois law requires identification of a sufficiently specific promise and its breach; it does not allow claims that teaching or evaluation was merely inadequate. *Ross v. Creighton Univ.*, 957 F.2d 410, 416–17 (7th Cir. 1992). Beza pleads acceptance, substantial tuition consideration, acknowledgment of written policies, and commitments concerning published advancement criteria, notice of material amendments, and dismissal review. Compl. ¶¶ 24-30. Her concrete allegations are that OUM enforced an unpublished prerequisite and omitted promised procedures, not that the Court should find her NBME result academically satisfactory. Id. ¶¶ 28-32. The objective questions are what requirements and procedures OUM agreed to provide, whether and how they were changed, and whether OUM honored them.

Defendant correctly identifies a vulnerability: the complaint does not supply verbatim handbook language, applicable editions, or the documents themselves. *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013), and *Kane v. Loyola Univ. of Chi.*, No. 22 CV 6476, 2024 WL 1157396, at *16-17 (N.D. Ill. Mar. 18, 2024), demand more than an abstract promise of fairness. But the pleaded policy-based allegations distinguish this case from a claim seeking judicial replacement of faculty judgment. At minimum, whether particular policies are enforceable should be evaluated with their actual text; Plaintiff seeks leave to identify the edition, quote the controlling clauses, and attach the authenticated materials if the Court finds Count I insufficient as pleaded.

OUM quotes a purported acceptance declaration requiring compliance with policy changes "as published on" its learning-management system (eOUM) and communications sent to an OUM email address. Def.'s Mem. 5 (ECF No. 30). Even assuming the declaration may be considered as integral to the complaint, this language does not conclusively establish that the disputed mandatory CBSE rule and escalating thresholds were ever published through that mechanism, that the provisions authorized retroactive application, or that the school complied with any separate dismissal procedures. On the pleaded facts, those issues remain disputed. Defendant's declaration is described in its memorandum, but the separate exhibit itself was not among the materials supplied for preparation of this response; the precise language and completeness should be checked against the docket before filing.

Academic deference is important but not boundless. *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699–700 (Ill. App. Ct. 2004), recognizes protection for genuine academic judgments and discusses arbitrary, capricious, or bad-faith action. The allegation that an institution invoked unpublished, repeatedly altered requirements and bypassed promised appeal procedures plausibly presents a different issue from whether a student deserved a higher mark. Beza does not contend that the March 15 warning was never sent. She contends that a final-attempt warning did not retroactively publish an earlier rule or supply the review allegedly promised. Compl. ¶¶ 16, 19, 30-32. These allegations should be evaluated as alleged, without resolving competing explanations for the dismissal.

**B. Count II may be maintained only as a properly distinct alternative contractual theory.**

Defendant is correct that Illinois does not ordinarily recognize a freestanding damages claim for violation of the implied covenant of good faith and fair dealing. *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001). Plaintiff does not seek to evade that rule. Count II also

alleges an implied-in-fact arrangement based on admission, payment, published norms and institutional conduct. Compl. ¶¶ 36-41. Rule 8(d)(2)–(3) permits alternative and even inconsistent pleading, particularly while the exact scope and enforceability of the written documents remain contested. The count should be understood as an alternative implied-in-fact contract claim only insofar as it identifies specific promises not conclusively governed by an enforceable express agreement. If its current language is duplicative, leave to replead distinctly, or to consolidate it with Count I, is preferable to merits dismissal with prejudice.

**C. Counts III–V allege distinct deceptive conduct, but additional Rule 9(b) detail may be required.**

Plaintiff alleges materially misleading representations about the present status of CBSE examinations as diagnostic, the absence of a published mandatory passing requirement, and the school's current use of unpublished thresholds. Compl. ¶¶ 10, 12–15, 46–52, 58–64, 71–77. These differ from a bare unfulfilled prediction that rules would never change. In particular, she identifies Dean Khrystal Boone as an administrator who allegedly made misleading statements in email and Zoom discussions concerning dismissal based on NBME or USMLE performance. Id. ¶ 60. She alleges that those representations prompted continued enrollment, tuition expenditure, preparation purchases, and foregone alternatives. Id. ¶¶ 50-53, 61-65. The complaint thus alleges a deception theory separate in concept from the failure to honor a contract.

Nevertheless, Rule 9(b) requires more than the general chronology and paraphrases now alleged. The complaint does not consistently state the specific words, date or approximate date, communication medium, speaker, and particular payment or enrollment decision attributable to each representation. Plaintiff therefore requests leave, if necessary, to plead those details from the referenced communications and identify the particular exhibit pages. This would permit a

principled distinction between contemporaneous false statements of fact, which may support fraud, and nonactionable future promises or promotional puffery. See *Pirelli*, 631 F.3d at 441-42; see also *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *4-6 (N.D. Ill. Feb. 4, 2019).

Count IV presents an additional duty-to-disclose issue. A university's superior knowledge alone does not invariably create a fiduciary or special relationship. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Plaintiff alternatively relies on alleged affirmative half-truths about the operative criteria and actual risk of dismissal, Compl. ¶¶ 60-62, which should be evaluated as misstatements or misleading partial disclosures, not simply silence. To the extent Count IV rests exclusively on nondisclosure, Plaintiff must allege facts supporting a recognized duty to speak; she requests permission to distinguish and refine those theories rather than a ruling that no possible amendment could suffice.

For Count V, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") does not convert every breach into fraud. Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 844 (Ill. 2005). But an independently deceptive solicitation or concealment of actual program conditions in connection with selling tuition-based services is analytically different from simple nonperformance. Compl. ¶¶ 69-79. Plaintiff alleges commercial representations to an Illinois student, continuing payments, specific educational expenditures, and a loss of ability to choose an alternative program. Id. Those allegations identify the claimed consumer-facing wrong, although the precise advertising and communications should be pleaded with the particularity appropriate to a deceptive-practices theory. Any amended pleading should also clarify the Illinois nexus and which asserted expenditures were paid to OUM rather than third-party vendors.

**D. The remaining tort claims present substantial doctrinal limits; any curable deficiencies should not be dismissed with prejudice.**

Count VII alleges a fiduciary relationship largely by reference to a student's dependency on a university. Compl. ¶¶ 94-100. Defendant cites substantial authority rejecting a fiduciary duty arising from an ordinary university–student relationship. See *Kane*, 2024 WL 1157396, at *17; *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2020 WL 231078, at *6 (N.D. Ill. Jan. 15, 2020). Plaintiff recognizes that superior institutional control and trust, without more, may be insufficient. If a more particular relationship of entrustment and accepted fiduciary responsibility can be alleged consistently with Rule 11, leave to amend would allow consideration of it. Otherwise, the contract and statutory remedies remain the more appropriate vehicles.

Count VI alleges negligent administrative handling of notice and appeals, not inadequate teaching. Compl. ¶¶ 82–90. Still, *Ross* rejects educational-malpractice theories, 957 F.2d at 414–17, and *Moorman Manufacturing Co. v. National Tank Co*., 435 N.E.2d 443, 448 (Ill. 1982), generally bars tort recovery for solely economic loss resulting from disappointed commercial expectations. Plaintiff's principal claimed expenses and lost opportunities overlap substantially with contract damages. If Count VI lacks a duty independent of contract and a legally cognizable tort injury, the Court may dismiss that count while preserving Count I; Plaintiff alternatively requests leave only if a viable independent duty and injury can be supported.

Count VIII references accreditation and consumer standards without specifying an applicable statute that creates the asserted standard of care. Compl. ¶¶ 106-112. Illinois does not automatically treat every regulatory or industry-standard violation as a freestanding "negligence per se" action or strict-liability claim. See *Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999). Plaintiff therefore does not suggest that cited ECFMG or WFME materials independently

establish strict liability. If the Court determines the count insufficient, Plaintiff requests leave to identify any actual applicable enactment and ordinary negligence elements supported by the evidence, or to withdraw the theory without prejudice to the otherwise viable claims.

**E. Count IX is properly considered, if at all, in the alternative.**

Count IX alleges tuition and fees received and retained by OUM under circumstances alleged to be inequitable. Compl. ¶¶ 115-123. An unjust-enrichment theory ordinarily cannot displace an enforceable express contract governing the same benefit. *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 570–71 (7th Cir. 2016). But Defendant disputes the asserted contract's terms and enforceability, and Rule 8(d) allows Plaintiff to plead restitution in the alternative if no enforceable agreement governs the challenged payments. Plaintiff requests that Count IX be construed or amended to expressly plead the absence of a controlling enforceable contract as its alternative premise; she does not seek double recovery. Amounts paid to third-party suppliers should not be characterized as benefits retained by OUM absent supporting facts.

**F. Requested remedies do not justify dismissal of otherwise valid claims.**

The Complaint requests correction of academic records and a neutral reference, as well as damages and potentially punitive relief. Compl., Prayer for Relief. These are requested remedies, not freestanding counts. Whether equitable relief is ultimately available depends on the nature of any established contractual or statutory right and the adequacy of legal relief; the prayer does not require dismissal of every underlying claim. See Fed. R. Civ. P. 54(c). Plaintiff does not seek an order compelling an academic passing grade. Punitive damages are not ordinarily available for an ordinary contract breach. *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 183–84 (Ill. 1986). But punitive or statutory relief should be analyzed only as to a surviving cause of action

authorizing it, subject to the required proof and applicable limitations. An overbroad demand for relief is not a reason to dismiss an otherwise sufficient liability theory.

**G. Alternatively, the Court should allow amendment under Rule 15 and Judge Jenkins's standing procedures.**

The motion seeks dismissal of all nine counts with prejudice at the pleading stage. The principal identified deficiencies, precise handbook clauses, the applicable editions, the dates and content of allegedly misleading communications, identification of applicable statutory duties, and explicit alternative pleading, are of the kind that may be addressed by a more particular pleading if supported by the documents. The referenced complaint exhibits A, C, D, and E do not appear to have accompanied the filed complaint, as Defendant points out. Def.'s Mem. 2 n.1. Plaintiff does not ask the Court to treat unfiled exhibits as evidence now before it. Instead, Plaintiff requests an opportunity to file a complete amended complaint with properly identified exhibits, if available and consistent with counsel's Rule 11 obligations.

Rule 15(a)(2) instructs courts to give leave freely when justice so requires. The Seventh Circuit has emphasized the strong preference for permitting an initial curative amendment when defects are potentially remediable. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510, 519–20 (7th Cir. 2015). Plaintiff specifically represents that contractual specificity, Rule 9(b) particulars, proper separation of theories, and allegations concerning remedies are the identified possible subjects of amendment; she does not represent that every count can necessarily be rescued. Should the Court find any count insufficient, Plaintiff requests an opportunity to seek leave with a proposed amended complaint and redline in accordance with the Court's standing procedures.

## IV. CONCLUSION

For these reasons, Plaintiff requests that the Court deny OUM's motion as to Count I and any other sufficiently pleaded claims; construe alternative remedies and claims consistently with Rule 8(d); decline to strike all requested relief merely because particular remedies may be unavailable on individual causes of action; and, to the extent the Court finds pleading defects, dismiss without prejudice and grant leave to amend under Rule 15(a)(2), rather than dismiss the entire action with prejudice.

Respectfully submitted,

/s/ John Norkus

John Norkus (ARDC No. 6309795)

LLG National Law Group

180 N. Stetson Ave., 35th Floor

Chicago, IL 60601

Telephone: 312.600.7457

Counsel for Plaintiff

Dated: November 1, 2026

CERTIFICATE OF SERVICE

I certify that on the date of electronic filing, I caused this document to be filed through the Court's CM/ECF system, which will transmit notice of the filing to counsel of record who are registered users.

/s/ John Norkus